## Scholler Bros., Inc., Appellant, *v.* Otto A. C. Hagen Corp.

Argued September 25, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Frederick L. Fuges,* with him *Ralph N. Kellam,* for appellant.

*Samuel I. Sacks,* with him *Sacks & Piwosky,* for appellee.

OPINION BY RENO, J., October 24, 1945:

In this action in assumpsit the court below dismissed plaintiff's reply questioning the legal sufficiency of the new matter alleged by defendant and has ordered the parties to proceed to the arbitration contended to be required by the contract in suit. Plaintiff has taken this appeal.

The statement of claim averred that on December 15, 1939, plaintiff, a manufacturer of textile soaps, and defendant, a dealer in oils and chemicals, entered into a verbal agreement for the purchase by plaintiff of a tank car of acidulated corn oil soapstock, which agreement was the subject of a written confirmation by a broker acting for defendant the following day. Plaintiff alleged that only light colored soapstock could be used by it in its business, as defendant knew, and that before delivery of the car, which contained dark soapstock, plaintiff had paid the sight draft attached to the bill of lading. It was further alleged that defendant, after being notified the soapstock was not usable by plaintiff, resold the car, after plaintiff had paid the freight and demurrage, and paid the net proceeds to plaintiff after the deducting freight and demurrage which had accrued on a second car of soapstock sent plaintiff but refused because it had not been ordered. Plaintiff's claim was for the difference between the contract price of the soapstock paid by it to defendant and the proceeds of the resale of the first car which defendant paid over to plaintiff; and for the freight and demurrage charges which plaintiff paid and

which defendant deducted from the resale monies otherwise payable to plaintiff.

The only factual issue raised by defendant's affidavit was whether defendant knew plaintiff could use only light colored soapstock in its business and hence whether there was a possibility of plaintiff being able to establish an implied warranty of fitness for a particular purpose. See Sales Act of May 19, 1915, P. L. 543, §15, 69 PS §124. Defendant, following its affidavit, pointed out, as new matter, that the broker's confirmation included the clause "N. Y. Produce Exchange Rules & Contract to govern", and alleged further that Rule 6 of that organization provided that "Any dispute arising out of this contract to be settled by the Committee on Vegetable Oils, Waxes and Fats of the New York Produce Exchange". It is plaintiff's contention that the agreement between the parties did not require a submission to arbitration before the Produce Exchange Committee prior to the institution of suit.

It is not clear from the pleadings whether the written confirmation embodied the exact terms of the earlier oral contract, or whether the clause purporting to make the Produce Exchange rules and contract applicable was a gratuitous addition by defendant's broker, but we shall assume the former, as in our view of the case the point is not controlling. It should be observed that the Arbitration Act of April 25, 1927, P. L. 381, 5 PS §§161 et seq., is of no moment here, as that statute, by §1, 5 PS §161, is in terms made applicable to certain written contracts only, while this agreement was admittedly oral. The Arbitration Act, however, did not entirely displace arbitration under the common law (*Philadelphia Housing Authority v. Turner Construction Co.*, 343 Pa. 512, 23 A. 2d 426; *Goldstein v. International Ladies' Garment Workers' Union*, 328 Pa. 385, 196 A. 43; *Isaac v. Donegal & Conoy Mutual Fire Insurance Co.*, 301 Pa. 351, 152 A. 95), and the pivotal question, therefore, is whether the agreement that disputes occurring in the course of the performance of the contract "be set-

tled" by the Committee of the Produce Exchange has the effect of an agreement to settle such disputes by arbitration.

No technical or formal words are necessary to constitute a reference of a controversy to arbitration, but it must clearly appear that the intention of the parties was to submit their differences to a tribunal and to be bound by the decision reached by that body on deliberation. *Keiser v. Berks County*, 253 Pa. 167, 97 A. 1067; *Somerset Boro. v. Ott*, 207 Pa. 539, 56 A. 1079; *Wilson v. Getty*, 57 Pa. 266. It is said that every reasonable intendment will be made in favor of agreements to arbitrate (*Bashford v. West Miami Land Co.*, 295 Pa. 560, 145 A. 678), and this is the applicable principle where agreements are found to call for the arbitration of disputes. But as an arbitration agreement bars recourse to the courts where the arbitrators are named in advance at common law (*Conneaut Lake Agricultural Association v. Pittsburg Surety Co.*, 225 Pa. 592, 74 A. 620; *Gowen v. Pierson*, 166 Pa. 258, 31 A. 83), and even if not named in advance, under the Act of 1927 (*Bashford v. West Miami Land Co.*, supra), the assent to relinquish a trial by jury is not to be found by mere implication. *Jacob v. Weisser*, 207 Pa. 484, 56 A. 1065; *Dobbling v. York Springs Railway Co.*, 203 Pa. 628, 53 A. 493; *Lauman v. Young*, 31 Pa. 306. Thus it was that the Supreme Court in *Weichardt v. Hook*, 83 Pa. 434, decided that an agreement between two parties that their attorneys should "adjust and settle" their differences was not a definite submission to arbitration.

Arbitration, while not surrounded by the technical procedural safeguards incident to litigation, is not a wholly informal process and requires for its validity the observance of certain minimum standards indispensable to the securing of a fair and impartial disposition of the merits of a controversy. Both parties are entitled to previous notice of the meeting of the arbitrators (*Share v. Becker*, 8 S. & R. 239); all the arbitrators must sit at the hearing on the dispute (*Bartolett v. Dixon*,

73 Pa. 129; *Painter v. Kistler,* 59 Pa. 331; *Backus' Appeal,* 58 Pa. 186); each side is entitled to be heard and to be present when the other party's evidence is being given (*Curran v. Philadelphia,* 264 Pa. 111, 107 A. 636); and, unless the submission allows a decision by a majority of the arbitrators, all must join in the award: *Weaver v. Powel,* 148 Pa. 372, 23 A. 1070; *Okison v. Flickinger,* 1 W. & S. 257; *Welty v. Zentmyer,* 4 Watts 75. It is manifest that a mere agreement for "settlement" of a dispute by a committee of the New York Produce Exchange, the nature of the procedure before which does not appear, does not contemplate the protective opportunities for a full hearing inherent in the arbitration process and is not a contract to arbitrate. There being no sufficient reference to a body empowered to dispose of the issue according to the established forms of law, there was no obstacle in the path of the institution of suit on the contract.

The assignments of error are sustained; plaintiff's reply raising questions of law is sustained; the order of the court below is reversed; and the record is remitted to the court below for trial on the issue raised by the statement of claim and the affidavit of defense.