Reisman *v.* Ranoel Realty Co., Appellant.

*David H. Marion,* with him *Allen D. Black,* and *Harold E. Kohn,* for appellant.

*Richard B. Sigmond,* with him *Leonard Spear,* and *Meranze, Katz, Spear & Bielitsky,* for appellee.

OPINION BY SPAULDING, J., April 12, 1973:

Appellant Ranoel Realty Company appeals from an order of Judge NED L. HIRSH of the Court of Common Pleas of Philadelphia confirming an arbitration award in favor of appellee Leonard M. Reisman.

The basis of this action was a contractual agreement entered into between appellant corporation and appellee, then president of the corporation, in June 1966. By the terms and conditions of that agreement, appellee was to construct two apartment buildings for appellant for a sum not to exceed $475,000. After completing the construction work, appellee brought an assumpsit action against appellant corporation. He sought to recover for the unpaid balance of the contract price, for additional work and materials furnished, allegedly at appellant's request, and for cash advances allegedly made to appellant by appellee. A default judgment which had been taken by appellee was stricken off by agreement of the parties, who stipulated that they would instead proceed to arbitration pursuant to the Pennsylvania Arbitration Act of 1927,[1] under the Rules of the American Arbitration Association.[2] Appellee subsequently filed a demand for arbitration, to which appellant filed an answer and counterclaim. The counterclaim charged appellee with fraud, conversion and breach of fiduciary duty, alleging that he misappropriated construction loans for his personal use.

---

[1] Act of April 25, 1927, P. L. 381, 5 P.S. §161 et seq.

[2] The original agreement between the parties had provided for the submission of "any disagreement" arising out of the contract to arbitration. Such arbitration was to be a condition precedent to any other legal action and was to be governed by the Rules of the American Arbitration Association.

On May 7, 1969, a hearing was convened before an arbitration panel of three construction industry experts. The arbitrators heard brief testimony from appellee, from the project architect, and from a principal of appellant corporation. There was greatly conflicting testimony as to the allegation that appellee had misappropriated funds and regarding the claim by appellee that he had been authorized by appellant to exceed the $475,000 contract limit in completing the construction project. Shortly after appellee began to testify, and before there was any opportunity for appellant to cross-examine him or to present its own witnesses, the parties agreed to narrow the issues by having counsel state each side's position in oral argument. When this argument was concluded, the parties agreed that each side would submit a brief to the arbitrators, after which there would be a second meeting with the panel in order to determine what witnesses and evidence would be necessary.

Appellee submitted a brief, with appellant filing its brief in response and asserting its counterclaim. On September 10, 1970, the hearing was reconvened with only the arbitrators and counsel present. At that hearing appellee was allowed, over objections by counsel for appellant, to file a rebuttal brief to appellant's counterclaim.[3] On September 28, counsel for appellant requested a further hearing in order to cross-examine appellee, to question an unnamed accountant cited by appellee in its rebuttal brief, and to present witnesses in its defense and in support of its counterclaim. This request was refused. The hearing was declared closed as of December 8, 1970, and on March 8, 1971, the arbitrators awarded appellee $50,000 and denied appellant's counterclaim in its entirety.

---

[3] There is no record of that hearing, a fact which is crucial to the determination of appellant's claim.

Appellant seeks to have this award vacated, claiming, *inter alia,* that the decision of the arbitrators to close the hearings effectively denied it a fair hearing in precluding the presentation of its witnesses and its right to cross-examine appellee's witnesses. Specifically, appellant claims that the conduct of the arbitrators violated the rules of the American Arbitration Association and presents grounds for vacating the award under the Arbitration Act.

It should be noted at the outset that the scope of judicial review of arbitrations commenced pursuant to a statute, as here, is considerably broader than that of common law arbitration. "Common law arbitration may be reviewed only for fraud, misconduct, corruption, or other such irregularity which caused the arbitrator to render an unjust, inequitable and unconscionable award." *Keller v. Local 249 I.B. of T.C., W&H,* 423 Pa. 353, 223 A. 2d 724 (1966). In statutory arbitrations, however, broad judicial review of the award and proceedings is permitted. *Keller v. Local 249, id.; Freeman v. Ajax Foundry Products,* 398 Pa. 457, 159 A. 2d 708 (1960). The Act provides that ". . . the court shall make an order vacating the award upon the application of any party to the arbitration: "(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of any party have been prejudiced. (d) Where the arbitrators exceeded their powers or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made. Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators." Act of April 25, 1927, P. L. 381, §10, 5 P.S. §170. No fraud or corruption need

be shown; misconduct can be "borne of indiscretion". *Seaboard Surety Co. v. Commonwealth,* 350 Pa. 87, 38 A. 2d 58 (1944), quoting *Berizzi Co. v. Krausz,* 239 N.Y. 315, 146 N.E. 436 (1925) (CARDOZO, J. in a case under the N.Y. Arbitration Law, which is very similar to the Act in question here).

The cases are legion enunciating the belief that lay arbitrators, like those on the panel which presided in the instant case, should not be held to the same standard of procedural correctness as their judicial counterparts. *Scholler Bros. v. Hagen Corp.,* 158 Pa. Superior Ct. 170, 44 A. 2d 321 (1945). Arbitrations, however, are not wholly informal proceedings and are in the "nature of judicial inquiries". The basic principles of hearing conduct must be adhered to, with "the arbitration process requiring for its validity the observance of certain minimum standards indispensable to the securing of a fair and impartial disposition of the merits of a controversy." *Scholler,* supra, at 173.

In the absence of any specific statutory provision or agreement of the parties to the contrary, participants in arbitrations are entitled to a full hearing with the opportunity to be heard and to present evidence. In *Smaligo v. Fireman's Fund Insurance Co.,* 432 Pa. 133, 247 A. 2d 577 (1968), an appeal from an award in a common law arbitration, our Supreme Court held that the refusal to receive evidence offered by one of the parties on a material issue constituted grounds for vacating the award, as that party had been "denied a full and fair hearing." Similarly, the *ex parte* receipt of evidence as to a material fact without notice to one of the parties has been held to constitute misconduct by the arbitrators sufficient to warrant vacating of their award. *Curran v. Philadelphia,* 264 Pa. 111, 107 A. 636 (1919). *Seaboard,* supra. The offended party in these cases was "deprived of its right to cross-examine [the witness heard] and to adduce evidence to rebut

his testimony." *Seaboard,* supra, at 92. As the right to cross-examination is crucial to the conduct of a "full and fair hearing", appellant would, at first blush, appear to be entitled to a further hearing, as the arbitrators' action denied it the opportunity to cross-examine or to present its own witnesses in rebuttal.[4]

Parties to an arbitration may, however, by their words or actions, waive these otherwise-guaranteed procedural protections. Indeed, the very rules of the American Arbitration Association provide, as cases have held, that a party's continued participation in proceedings where the hearing panel may have acted in objectionable fashion bars a later complaint as to the misconduct of the arbitrators.[5] See *Rosenbaum v. Drucker,* 346 Pa. 434, 31 A. 2d 117 (1943), *Curran v. Philadelphia,* supra. The party who asserts that such a waiver has taken place has the burden of showing such words or conduct of the waiving party. *Curran,* supra. Appellee specifically claims, and the court below predicated its order on a finding that, appellant waived his right to any further hearing or to the introduction of further evidence at the September 10, 1970 (second) meeting of the arbitrators with counsel. The court below found that the parties at that meeting had "agreed that the cases of both sides had been presented by their briefs and that neither side had any further testimony it wished to offer. The parties agreed further that the decision to reopen the hearings to take further testi-

---

[4] Indeed, Rule 34 of the American Arbitration Association mandates that prior to the closing of hearings, the arbitrators shall "specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard", and may only close those hearings "upon receiving negative replies".

[5] Rule 37 of the American Arbitration Association provides: "Any party who proceeds with the arbitration after knowledge that any provision or requirement of these Rules has not been complied with and who fails to state his objection thereto in writing, shall be deemed to have waived his right to object."

mony if necessary, or to declare the hearing closed, should be left solely to the discretion of the arbitrators." If this finding were supported by the record, the court below would have been justified in holding that appellant's consent to such an agreement amounted to a waiver of any further hearing and would bar its present claim for relief.

The record in this case fails to support the finding of the court below that such an agreement had in fact been reached. There is no transcript of the September 10 meeting of the panel with counsel. The *only* evidence to support the conclusion that the right to further hearing had been waived was a letter dated September 11 to the parties from the American Arbitration Association. The letter, purporting to "confirm arrangements" made at the hearing the day before, stated that "[U]pon receipt of the [appellee's rebuttal] Brief the Arbitrators shall determine whether an additional hearing will be necessary, or declare the hearing closed. . . ." There is no other evidence of any such agreement of the parties existing, and there is no evidence that appellant consented to any such an agreement. Appellant contends that no such agreement was ever reached, and indeed had lodged a demand for further hearing some two weeks after receipt of the Association letter.[6] As sworn evidence of such an agreement is lacking and is crucial to our determination of appellant's claim of misconduct, we cannot affirm the finding of the court below on the record as it now stands. A further hearing must be held to determine whether the appellant

---

[6] Consenting to such an agreement is certainly inconsistent with appellant's previous demands at the initial hearing to present its witnesses and to cross-examine those of appellee. Certainly no such agreement to waive further hearing can be inferred from the submission of briefs after the initial hearing, which might in other circumstances signal the closing of the hearings. See Rule 34 of the American Arbitration Association.

in any way consented to the closing of hearings at the September 10, 1970 meeting with the arbitrators.

The order of the court below is reversed and the case is remanded for a further factual hearing on the parties' motions.