# Abramovich v. Pennsylvania Liquor Control Board

*Robert G. Sable*, for plaintiff.
*Kenneth W. Makowski*, for defendant.

MORGAN, *J.*, April 21, 1978—This case was transferred to us by the Commonwealth Court which held that it is an appeal from an arbitration under the Act of April 25, 1927, P.L. 381, 5 P.S. §161 et seq., and that we therefore have jurisdiction of the matter.

The opinion by the late Judge Kramer gives the background of the case:

"Abramovich entered into a contract with the P.L.C.B. for the storage, handling, and transportation of liquor and supplies for the P.L.C.B.'s Northwestern Pennsylvania Distribution Center. Shortly after the contract was formed, a dispute arose over a request by Abramovich that adjustments be made to the contract to reflect increased labor costs.

"Provision 41 of the contract provides the following arbitration provision for the settlement of disputes:

"'41. Disputes—Any dispute or controversy arising under this contract that is not disposed of by the parties within fifteen (15) days shall be referred to the Commonwealth Attorney General who shall, after hearing, make an adjudication within fifteen (15) days. Any court review of such adjudication shall be an appellate review, based on the record limited to pleadings, exhibits and testimony produced and considered before the Commonwealth Attorney General.'

"Pursuant to this provision, Deputy Attorney General, W. W. Anderson . . . conducted a hearing on the dispute on April 8, 1976. An adjudication which was adverse to Abramovich was rendered on May 6, 1976, and supplemented on June 21, 1976. Abramovich subsequently filed the petition now at

issue." Abramovich v. Pa. Liquor Control Bd., 31 Pa. Commonwealth Ct. 373, 376 A. 2d 293 (1977).

Abramovich asks us to vacate the award because Anderson was, at the time of his designation by the Attorney General to serve as arbitrator, the deputy attorney general assigned to the P.L.C.B. and had been so for at least two years previously. As a general proposition, an attorney for one of the parties to an arbitration is disqualified from acting as an arbitrator. In such case, bias and prejudice is presumed and implied and any showing of actual bias or prejudice is immaterial and unnecessary: Bole v. Nationwide Insurance Co., 475 Pa. 187, 379 A. 2d 1346 (1977). The P.L.C.B. is, of course, an independent administrative board (Liquor Code of April 12, 1951, P.L. 90, art. II, sec. 201, as amended, 47 P.S. §2-201), and, as such, the Attorney General is its legal advisor: The Administrative Code of April 9, 1929, P.L. 177, as amended, 71 P.S. §192 et seq.

However, Abramovich must be charged with having knowledge of the Attorney General's relationship to the P.L.C.B. at the time he entered into the contract. He knew that he was agreeing to have the lawyer for the P.L.C.B. decide disputes and he could not reasonably expect him to be disinterested. The principle calling for disqualification of counsel is not applicable where the contract allows selection of partisan arbitrators: Bole, supra. Further, such a provision in a contract is not arbitration in the usual sense. "Boards of arbitration under that act (i.e., Arbitration Act of 1929) are judicial bodies. Individuals given the right to decide in their own favor or in favor of the person who employs them cannot be said to be exercising a judicial function at all. They exercise a power given them

by the contract to decide, not to judicially hear and determine." Philadelphia Hous. Auth. v. Turner Const. Co., 343 Pa. 512, 519, 23 A. 2d 426 (1942). Thus, Abramovich waived his right to expect the standard of judicial impartiality ordinarily required of arbitrators under the Arbitration Act of 1927. The principle of law here is set forth in 65 A.L.R. 2d 755, 764, as follows:

"§5. Waiver of right to object.

"Even though an arbitrator may appear to be biased, because of relationship to one of the parties, or prejudiced for other reasons, an action to stay an arbitration or to disqualify an arbitrator will not be successful if the moving party knew at the time the agreement was made of the facts alleged to constitute bias or prejudice, or failed to object at the earliest opportunity in the arbitration proceedings. This is so even in an action to set aside an award on the basis of bias or prejudice."

See also 16 Williston on Contracts, 3d ed. §1920, 221: "Even though an arbitrator appears to be biased, his award cannot be set aside if the party who wants to do so knew, at the time the agreement was made, about his bias or prejudice, or failed to object, at the earliest opportunity, in the arbitration proceedings." As was said in The North Lebanon Railroad Co. v. McGrann, 33 Pa. 530, 533 (1859), cited in Merritt—Chapman & Scott Corp. v. Penna. Turnpike Comm., 261 F. Supp. 1 (M.D. Pa. 1966): "We have nothing to do with the prudence of such an agreement. It is ours to enforce the contract as the parties have made it. A party litigant may refer to his adversary, if he will, or to any one interested adversely to himself."

That the Attorney General designated Anderson to decide the dispute instead of some other of his

many deputies does not help Abramovich. The Attorney General would understandably look to someone familiar with P.L.C.B. matters. Abramovich had no more right to expect the Attorney General to appoint a deputy from the Department of Forests and Waters or some other agency unrelated to the P.L.C.B. than to expect private counsel for a party to designate an associate engaged in the practice of some unrelated specialty. We therefore conclude that Abramovich is not entitled to have the award set aside just because Anderson was counsel to the P.L.C.B.

Abramovich also contends that we should modify the adjudication and find in his favor because the arbitrator rests his decision on a theory that was not raised at the hearing. This, too, is without merit.

According to the evidence presented at the hearing by Abramovich, he was awarded the warehousing contract by the P.L.C.B. on June 1, 1975. His bid was based on the use of nonunion employes both in the warehouse and for transportation. Transportation was to be done by subcontractors with whom he had entered into agreements prior to June 1, 1975, conditioned upon his being awarded the contract. After the award, Abramovich began the operation of the warehouse using nonunion employes, but within ten days the employes of the prior warehouseman, who had lost their jobs when Abramovich got the contract, picketed his warehouse, preventing deliveries. Abramovich promptly (June 10, 1975) agreed with General Teamsters Local Union No. 397 to employ union labor and to assume the collective bargaining contracts that the union had with his predecessor. Nonunion employes he had originally hired to operate the warehouse were replaced by union members. As soon as these union members were hired by

Abramovich they refused to load the trucks of his nonunion transportation subcontractors and on June 13, 1976, Abramovich agreed to employ the drivers and helpers of the company which had provided transporation for his predecessor and to assume its contract which was also with General Teamsters Local Union No. 397. Abramovich then cancelled his agreements with his transportation subcontractors and purchased his own equipment for that purpose. Abramovich argued that the union activity compelled him either to meet its demands or to go out of business and that therefore the increased costs of the union employes were ". . . a *mandatory requirement* for the Warehouseman to change the rate of payment to labor. . . ." as provided for in his contract with the P.L.C.B., entitling him to an adjustment in his compensation. The arbitrator rejected this argument, concluding that the picketing of the union was a plain violation of section 8(b)(2) of the National Labor Relations Act of July 5, 1935, 49 Stat. 452, as amended, 29 U.S.C.A. §158, against which Abramovich had legal, equitable and administrative recourse; that since his increased labor expenses were caused by illegal union activity against which he did not even attempt to invoke the relief available to him, they were not mandatory changes in labor rates within the meaning of the contract.

That the applicability of the National Labor Relations Act was not advanced at the hearing was acknowledged by the arbitrator in his adjudication and he thereafter afforded Abramovich the opportunity to argue against it, which he did unsuccessfully. We would have gone further and remanded this matter to the arbitrator to receive such additional testimony as Abramovich might wish to pre-

sent on the issue. The arbitration process requires for its validity the observance of certain minimum standards indispensable to the securing of a fair and impartial disposition of the merits of a controversy: Scholler Bros. v. Otto A.C. Hagen Corp., 158 Pa. Superior Ct. 170, 44 A. 2d 321 (1945). In the absence of any specific statutory provision or agreement of the parties to the contrary, participants in arbitrations are entitled to a full hearing with the opportunity to be heard and to present evidence: Reisman v. Ranoel Realty Co., 224 Pa. Superior Ct. 220, 303 A. 2d 511 (1973). We would not relax this requirement on the ground argued by the P.L.C.B., that the issue is concluded by the evidence previously presented by Abramovich in his own case. However, Abramovich does not seek this relief. He did not ask the arbitrator for a rehearing, he doesn't ask for it in his petition for review, and in his brief filed with us (page 18) he expressly states that this is not his request. It is reasonable to take from this that he has no other evidence that would aid him on this count. The relief sought is for us to make an award in his favor simply because the arbitrator's adjudication was based on a theory not argued at the hearing, without regard to whether it is supported in fact and law. We are furnished no authority for this proposition and know of none. As a matter of fact, whether the union activity was a "mandatory requirement" within the meaning of the contract was expressly recognized by the parties at hearing as the main issue. That the arbitrator was more perceptive than the parties in finding labor law principles to resolve the dispute is scarcely a reason to reject his decision. His well-reasoned adjudication was amply supported by authorities and, for all intents and purposes,

Abramovich made little effort to counter it, resting his petition for review on the grounds we have already discussed.

For the foregoing reasons, we enter the following

## ORDER

And now, April 21, 1978, the petition for review is denied.