J-A09028-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| THOMAS S. ETZLER, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF RECYCLING EQUIPMENT CORPORATION, | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| GUNTHER "BUD" ETZLER, STEPHEN P. ETZLER, WILMA D. ETZLER, RECYCLING EQUIPMENT CORP., INC., | : : : : | |
| Appellees | : | No. 2288 EDA 2014 |

Appeal from the Judgment entered October 9, 2014,
Court of Common Pleas, Montgomery County,
Civil Division at No. 09-25465 and 09-26544

BEFORE: BOWES, DONOHUE and STABILE, JJ.

MEMORANDUM BY DONOHUE, J.:            **FILED NOVEMBER 17, 2015**

Appellant, Thomas S. Etzler ("Thomas"), appeals from the judgment entered on October 9, 2014 following the issuance of an arbitrator's award in favor of Appellees, Gunther Etzler ("Gunther"), Stephen P. Etzler ("Stephen"), Wilma D. Etzler ("Wilma"), and Recycling Equipment Corp., Inc. ("REC"). For the reasons that follow, we affirm in part, reverse in part, and remand to the trial court for further proceedings in accordance with this Memorandum.

This case arises from a family dispute between a father (Gunther) and his two sons (Thomas and Stephen), each of whom were equal one-third

owners of the stock of REC. All three were employees of REC, with Thomas

serving as its president. According to the trial court,

> The dispute between the shareholders originated with a failed attempt by [Thomas] to fire his father, [Gunther,] and force him to sell his shares. Thomas claims he became aware of a plan by his brother Stephen and Gunther to freeze him out as a minority shareholder. Thomas' plan failed because Gunther and his wife [Wilma],[1] who believed themselves to be the sole directors of REC, convened a special meeting of the board of directors on August 12, 2009, and passed a resolution that removed Thomas as president, rescinded the termination of Gunther's employment, appointed Gunther as president of REC, appointed new corporate counsel, and revoked Thomas' check-signing authority for the corporation.[2]

---

[1] Wilma was a purported director of the corporation but never a shareholder.

[2] In mid-November, 2009, additional corporate documents were located that revealed Stephen alone, rather than Gunther and Wilma, constituted the REC board in August 2009. Accordingly, pursuant to a board resolution dated November 17, 2009, Stephen promptly ratified and confirmed the actions taken by Gunther and Wilma, acting as the ostensible board three months earlier.

Trial Court Opinion, 8/28/2012, at 1-2.

On August 17, 2009, Thomas commenced suit by a writ of summons

at civil action number 2009-25465 against REC, Gunther, Stephen and

Wilma (collectively, the "Appellees"). On August 26, 2009, REC filed a

complaint against Thomas at civil action number 2009-26554), seeking to

enjoin Thomas from, inter alia, disclosing or transmitting REC's confidential

information or communicating with REC's customers. The parties agreed to an injunction and standstill agreement, at which time the parties attempted to negotiate the purchase of Thomas' stock in REC pursuant to the terms of a shareholder's agreement executed by the three shareholders and REC in 1998 (hereinafter, the "Buy Sell Agreement").

As explained therein, the purpose of the Buy Sell Agreement is to keep "all of the common stock of [REC] [] owned by those who are actually engaged in the conduct of the business." Motion to Stay Operation of Shareholder Agreement and Dissolve the September 2, 2009 Stipulated Injunction and Standstill Agreement (hereinafter, the "Motion to Stay"), 2/24/2010, Exhibit F. Pursuant to the terms of the Buy Sell Agreement, the termination of a shareholder's employment, "whether voluntary or involuntary," constitutes an offer to sell all of his stock at book value to (1) REC, for thirty days, (2) the remaining shareholders, for thirty days, or (3) to REC, which must purchase the shares. Motion to Stay, 2/24/2010, Exhibit F ¶¶ 2, 4-6.

When negotiations to determine the book value of REC's stock failed, on February 24, 2010 Thomas filed his Motion to Stay, in which he alleged generally that the Appellees had "frustrated the buyout process" by refusing to provide Thomas and his accountant with the necessary information and documentation to assess the value of his stock. Thomas also attached to the Motion to Stay a draft complaint in which he set forth numerous personal

causes of action against the Appellees. Gunther and Stephen responded to the Motion to Stay by asking the trial court to order the parties to arbitrate their disputes as required by the arbitration provision in the Buy Sell Agreement.[1]

On December 30, 2011, the Honorable Kent H. Albright granted Thomas' motion to dissolve the stipulated injunction, but denied the request to stay the operation of the arbitration provision of the Buy Sell Agreement. Instead, Judge Albright ordered the parties to arbitrate. On January 17, 2012, Thomas filed a complaint at civil action number 2009-25465 (hereinafter, the "Complaint"). Unlike the draft complaint attached to the Motion to Stay, the Complaint asserted both personal claims against Gunther, Stephen and Wilma as well as derivative claims on behalf of REC against them. In particular, Counts I and II of the Complaint sets forth derivative claims by REC for declaratory relief and breach of fiduciary duties.

---

[1] Paragraph 18 of the Buy Sell Agreement provides:

> 18. Arbitration. Any party to this Agreement shall have the right to demand that a controversy or claim arising out of or related to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the then current rules of the American Arbitration Association of Philadelphia, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. The costs of such arbitration shall be borne by the losing party.

Motion to Stay, 2/24/2010, Exhibit F ¶ 18.

Counts III and IV set forth Thomas' personal claims for the appointment of a custodian and for wrongful discharge. Counts V and VI set forth both personal and derivative claims for civil conspiracy and aiding and abetting liability.

In response to preliminary objections to the Complaint, by order and opinion dated August 28, 2012, the Honorable Stanley R. Ott[2] ordered all of the claims in Thomas' complaint to be arbitrated in accordance with the Buy Sell Agreement, including the derivative claims. On November 7, 2013, the arbitrator, William Ewing ("Ewing"), issued a decision in favor of the Appellees, finding against Thomas on all six claims. On December 9, 2013, Thomas filed a petition to vacate the arbitration award, which the trial court (per Judge Ott) denied pursuant to an opinion and order dated June 30, 2014.

Following the entry of judgment, on appeal Thomas presents the following four issues for our consideration and determination:

1.  Did the trial court commit an error of law in compelling arbitration where the claims in [Thomas'] Complaint were outside the scope of the arbitration clause?

2.  Did the trial court commit an error of law in determining that the derivative claims on behalf of the corporation for breach of fiduciary duty were actually direct claims and thus subject to the

---

[2] Judge Albright reached mandatory retirement status at the end of 2011 and became a Senior Judge in January 2012.

arbitration claim contained in a contract governing only the transfer of shares?

3. Did the trial court abuse its discretion when it refused to grant [Thomas'] motion for reconsideration based on an intervening change in the applicable law?

4. Did the trial court commit an error of law or abuse its discretion when it refused to vacate the arbitrator's award based on the denial to [Thomas] of a full and fair hearing?

Thomas' Brief at 4-5.

Thomas' first three issues on appeal challenge the trial court's decision to refer all of the claims in Thomas' Complaint to arbitration. In determining whether a claim is subject to arbitration, judicial inquiry is limited to the questions of whether a valid agreement to arbitrate was entered into and whether the dispute involved falls within the scope of the arbitration provision. *McNulty v. H & R Block, Inc.*, 843 A.2d 1267, 1269 (Pa. Super. 2004). As an appellate court, in determining the propriety of a trial court's order on preliminary objections in the nature of a petition to compel arbitration, we examine the trial court's ruling for abuse of discretion or error of law. *Pittsburgh Logistics Systems, Inc. v. Professional Transportation and Logistics, Inc.*, 803 A.2d 776 (Pa. Super. 2002). Our scope of review is plenary. *McNulty*, 843 A.2d at 1269 (citing *Huegel v. Mufflin Const. Co., Inc.*, 796 A.2d 350, 354 (Pa. Super. 2002)).

Judge Ott's written opinions are not helpful in addressing the arbitrability issues. With respect to Thomas' direct claims, Judge Ott relied upon Judge Albright's prior order on the Motion to Stay directing the parties to arbitration. Trial Court Opinion, 8/28/2012, at 5. Judge Ott credited the Appellees' contention that the direct claims in Thomas' Complaint were also set forth in the draft complaint attached to the Motion to Stay. According to this reasoning, because Judge Albright denied the Motion to Stay, he must have determined that the direct claims in the attached draft complaint were within the scope of the arbitration provision of the Buy Sell Agreement. *Id.* Unfortunately, Judge Albright's December 30, 2011 order merely denies the request to stay arbitration and does not explain the basis for doing so. Trial Court Order, 12/30/2011, at 2. We note that Thomas' allegations in the Motion to Stay itself (rather than in the attached draft complaint) related solely to the Appellees' efforts to disrupt the valuation process, thus clearly raising issues within the scope of that contract's arbitrability provision. Moreover, and more importantly, Judge Albright's order does not indicate that he even considered the arbitrability of the claims in the (then unfiled) draft complaint. And Judge Ott, like Judge Albright, offered no explanation or rationale regarding the arbitrability of the direct claims in Thomas' Complaint. Trial Court Opinion, 8/28/2012, at 6 ("Because the complaints in these actions raise virtually identical claims [as in the draft complaint], we

are constrained to make the same analysis as did Judge Albright … that these claims are subject to the mandatory ADR provision.").

Instead, Judge Ott observed that Thomas' Complaint, as opposed to his prior draft complaint, included shareholder derivative claims asserted on behalf of REC, and that as a result the sole issue before him was whether Thomas, by "recasting" his claims as derivative rather than direct, could "avoid Senior Judge Albright's directive to submit the claims to ADR?" *Id.* at 3. To answer this question, Judge Ott cited to Section 7.01(d) of the American Law Institute's Principles of Corporate Governance ("ALI Principles"). Section 7.01(d) provides that in closely held corporations, when certain conditions obtain, derivative claims against other shareholders may be treated as direct claims.[3] *Id.* at 6-7. While Pennsylvania appellate courts had never adopted Section 7.01(d), Judge Ott noted that in ***Cuker v. Mikalauskas***, 692 A.2d 1042 (Pa. 1997), our Supreme Court adopted

---

[3] Section 7.01(d) of the ALI Principles of Corporate Governance provides:

> (d) In the case of a closely held corporation [§ 1.06], the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

ALI Principles of Corporate Governance § 7.01(d) (1994).

Sections 7.02 through 7.10 and 7.13 of the ALI Principles, and indicated that "[o]our adoption of the [specified] sections is not a rejection of other sections not cited. … Courts of this Commonwealth are free to consider other parts of the [ALI Principles] and utilize them if they are helpful and appear to be consistent with Pennsylvania law." *Id.* at 604 n.5.

In *Hill v. Ofalt*, 85 A.3d 540 (Pa. Super. 2013), this Court subsequently determined that our Supreme Court would not adopt Section 7.01(d) of the ALI Principles to the extent that it would permit "courts to ignore the corporate form and treat derivative claims as direct claims and allow an individual recovery on a derivative claim." *Id.* at 553-556. We concluded that Section 7.01(d) is inconsistent with Pennsylvania law, including in particular Section 1717 of the Business Corporation Law, which limits the standing to sue to enforce a director's duty to "the corporation" or to "a shareholder … by an action in the right of the corporation." *Id.* at 556 (citing 15 Pa. C.S.A. § 1717).  As such, in *Hill* we held that since appellant "willingly chose to incorporate and willingly chose to create the separate entity, ... [r]edress for any injury" to the corporation belongs exclusively to the corporation and not to individual shareholders.[4] **Id.**

---

[4]  Given our disposition of this appeal, including the application of our decision in *Hill*, Thomas' third issue on appeal (contending that the trial court erred in not reconsidering its August 28, 2012 order and opinion) is moot.

While it is now clear that Judge Ott should not have relied upon section 7.01(d) of the ALI Principles, we disagree with Thomas that the derivative nature of some of his claims is dispositive of their arbitrability. As discussed hereinabove, REC is a signatory to the Buy Sell Agreement and has rights and obligations thereunder, including the first option to purchase the shares of a departing shareholder and the obligation to purchase said shares if the remaining shareholders decline to do so. Motion to Stay, 2/24/2010, Exhibit F ¶¶ 2, 4-6. As such, any derivative claims brought on REC's behalf are arbitrable if they relate in any way to the execution of the procedures set forth in the Buy Sell Agreement, including the determination of the book value of shares to be purchased by REC.

Accordingly, this Court must review each of the claims in Thomas' Complaint to determine if they arise under or relate to the Buy Sell Agreement or the breach thereof. Motion to Stay, 2/24/2010, Exhibit F ¶ 18. In Pennsylvania, the issue of whether a particular dispute falls within a contractual arbitration provision is a matter of law for a court to decide. *Huegel*, 796 A.2d at 354. To determine whether the claim is subject to arbitration the court engages in a two-prong analysis: first, does a valid agreement exist, and second, is the dispute within the scope of the agreement. *Keystone Technology Group, Inc. v. Kerr Group, Inc.*, 824 A.2d 1223, 1227 (Pa. Super. 2003). The merits of the claims to be arbitrated should not be examined when performing this analysis.

*Strausser Enterprises, Inc. v. Segal & Morel, Inc.*, 89 A.3d 292, 296 (Pa. Super. 2014). Pennsylvania has a liberal policy of favoring arbitration, but this policy "does not require the rubber stamping of all disputes as subject to arbitration." *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 661 (Pa. Super. 2013) (quoting *McNulty v. H & R Block, Inc.*, 843 A.2d 1267, 1271 (Pa. Super. 2004)), *appeal denied*, 86 A.3d 233 (Pa. 2014), *cert. denied*, 134 S. Ct. 2890 (2014).

Count I of Thomas' Complaint is a derivative claim seeking declaratory relief "to determine the legal obligations under Pennsylvania law" of REC for the period between August 12, 2009 until at least November 17, 2009. Specifically, Thomas contends that

> 44. During that period, [Gunther] and [Wilma] terminated [Thomas] as [REC's] President; reversed [Thomas'] decision to terminate [Gunther] as an employee; promoted [Gunther] to President; and hired [REC's] counsel to bring claims against [Thomas].

Complaint, 1/17/2012, ¶ 44. Thomas argues that these acts, including in particular his termination, violated Pennsylvania law because Gunther and Wilma were not REC's board of directors and thus their acts were null and void. *Id.* ¶¶ 46-47. Moreover, the later attempt by Stephen (the purported sole member of REC's board of directors) to ratify the actions of Gunther and Wilma was ineffective because (1) Stephen was not properly elected to the board of directors, and (2) even if Stephen was the sole member of the

board of directors, it is not legally possible under Pennsylvania law to ratify null and void acts. *Id.* ¶¶ 48-51. As a result, under Count I Thomas requests a declaration that the acts of Gunther, Wilma, and Stephen in, inter alia, terminating his employment, were illegal. The prayer for relief further requests "such other and further relief as may be just and proper under the circumstances." *Id.*

We cannot agree with Thomas that the trial court erred in its determination that Count I of the Complaint was arbitrable under the Buy Sell Agreement. The Buy Sell Agreement governs the sale of shares of REC upon an event of termination, whether voluntary or involuntary, setting forth the procedure by which said sale is to be effectuated. A buy out of shares cannot occur without a valid termination, and thus this claim "arises out of or relates to" the Buy Sell Agreement.

We likewise conclude that the trial court did not err in deciding that Counts II, IV, V, and VI of Thomas' Complaint are arbitrable under the Buy Sell Agreement. Count II asserts a derivative claim for breach of fiduciary duties owed to REC. The allegations in Count II, including those incorporated by reference, allege a variety of financial irregularities by the Appellees, including failures (1) to "maximize the assets" of REC, (2) to maintain accurate and complete financial records, including "egregious lapses" in recordkeeping and accounting practices, (3) to avoid self-dealing transactions, (4) to develop the business of REC and operate it in a manner

beneficial to REC. *Id.* ¶¶ 31-35, 58-59. Thomas also incorporates specific allegations against the Appellees directly related to efforts to value his stock pursuant to the Buy Sell Agreement, including refusals to produce corporate books and records in October 2009. *Id.* ¶¶ 27-28.

Similarly, in connection with Count IV, a direct claim for wrongful discharge, Thomas contends that the Appellees terminated him to, inter alia, cover up fraudulent financial statements, and to this end he incorporates a series of allegations related to efforts by Appellees to manipulate REC's financial books and records and to present false information to him as the minority shareholder. *Id.* ¶¶ 74, 35. Counts V and VI are claims for civil conspiracy and aiding and abetting liability for the actions set forth in Counts II and IV.

In our view, the trial court did not err in deciding that these Counts are arbitrable. The Buy Sell Agreement contains a detailed methodology for determining the book value of the shares of stock to be purchased (either by REC or the remaining shareholders), including the process of appointing accountants and a detailed list of necessary and proper adjustments to book value to be incorporated into the calculations. As a result, Thomas' claims of fraud, self-dealing, and financial irregularities all relate to the determination of the purchase price of his shares pursuant to the Buy Sell Agreement. In short, claims based upon allegations of financial improprieties relate to the proper calculation of book value of the stock and are, therefore, arbitrable.

Finally, Count III of Thomas' Complaint sets forth a claim pursuant to section 1767(a)(2) of Pennsylvania's Business Corporation Law, which permits a trial court to appoint a custodian for a closely-held corporation if the directors or those in control have acted "illegally, oppressively, or fraudulently" toward a shareholder owning 5% or more of the outstanding shares of the corporation. 15 Pa. C.S.A. § 1767(a)(2). Thomas, as the owner of more than 5% of the outstanding stock of REC, has standing to seek the appointment of a custodian under this provision. Because the appointment of a custodian does not arise from or relate to any provision of the Buy Sell Agreement, this claim is not subject to its arbitration provision.

For these reasons, we affirm the trial court's order dated August 28, 2012 with respect to Counts I, II, IV, V, and VI of Thomas' Complaint, but reverse with respect to Count III. On remand, the trial court must decide Thomas' claim in Count III, which we conclude should not have been referred to arbitration.

Because we are remanding for further proceedings, we will also address Thomas' fourth issue on appeal, in which he contends that the trial court erred in not vacating the arbitration award because the record reflects that he was denied a full and fair hearing. The outcomes of non-judicial arbitration proceedings are typically binding, and our review of a common law arbitration award is narrowly circumscribed. ***Vogt v. Liberty Mut. Fire Ins. Co.***, 900 A.2d 912, 921 (Pa. Super. 2006) (citing ***F.J. Busse Co., Inc.***

*v. Sheila Zipporah, L.P.*, 879 A.2d 809, 811 (Pa. Super. 2005)). Courts may not vacate or modify arbitration decision unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award. *See, e.g.*, *Richmond v. Prudential Prop. & Cas. Ins. Co.*, 856 A.2d 1260, 1264 (Pa. Super. 2004).

Here, Thomas contends that he was denied a hearing because the arbitrator (1) refused to permit discovery or the introduction of evidence of events after December 31, 2009; and (2) denied him access to documents withheld pursuant to claims of attorney-client privilege even though the allegedly privileged documents were placed at issue and/or because the privilege had been waived.

On appeal, Thomas relies on three cases, *Smaligo v. Fireman's Fund Ins. Co.*, 247 A.2d 577 (Pa. 1968), *Zak v. Prudential Prop. & Cas. Ins. Co.*, 713 A.2d 681 (Pa. Super. 1998), and *Andrew v. CUNA Brokerage Services, Inc.*, 976 A.2d 496 (Pa. Super. 2009). Thomas contends that these cases stand for the proposition that an arbitration award must be vacated if the arbitrator refuses to "admit relevant evidence of great import." Thomas' Brief at 42. In *Andrew*, this Court vacated an arbitration award entered after the arbitrator ruled that the losing party was not entitled to an evidentiary hearing.

"Arbitration, while not surrounded by the technical procedural safeguards incident to litigation, is not a wholly informal process and requires for its validity the observance of certain minimum standards indispensable to the securing of a fair and impartial disposition of the merits of a controversy." ***Scholler Bros. v. Otto A.C. Hagen Corp.***, 158 Pa. Super. 170, 44 A.2d 321, 322 (1945). These minimum standards require that both parties are provided with notice, all the arbitrators must sit at the hearing, each side is entitled to be heard and to be present when the other party's evidence is being given and, unless the submission allows a decision by a majority of the arbitrators, all must join in the award. ***Id. See also Allstate Ins. Co. v. Fioravanti***, 451 Pa. 108, 299 A.2d 585, 588 (1973) (once a dispute has been submitted to arbitration, the parties are entitled to a hearing with "the necessary essentials of due process, i.e., notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause."); ***Reisman v. Ranoel Realty Co.***, 224 Pa. Super. 220, 303 A.2d 511, 514 (1973) (arbitrations are not wholly informal proceedings and the basic principles of hearing conduct must be adhered to, with the arbitration process requiring for its validity the observance of certain minimum standards indispensable to the securing of a fair and impartial disposition of the merits of a controversy, i.e., a full hearing with the opportunity to be heard and to present evidence.)

"[A]djudicatory action cannot validly be taken by any tribunal, whether judicial or administrative, except upon a hearing, wherein each party shall have the opportunity to know of the claims of his opponent, to hear the evidence introduced against him, to cross-examine witnesses, to introduce evidence in his own behalf and to make argument." ***Fioravanti***, 299 A.2d at 588. Therefore, where a matter is submitted to arbitration, arbitrators are obliged to abide by the minimal procedural requirements necessary for common law arbitration which entails granting the parties a full and fair hearing.

*Andrew*, 976 A.2d at 501-02.

In *Smaligo* and *Zak,* the arbitrator conducted an evidentiary hearing, but refused to permit the introduction of expert testimony before ruling against the party proffering it. *Smaligo*, 247 A.2d at 580; *Zak*, 713 A.2d at 686. Thomas contends that as in *Smaligo* and *Zak*, in this case the arbitrator refused to permit the introduction of any evidence after December 31, 2009 and further refused to permit him access to potentially relevant documents withheld on privilege grounds. We cannot agree. In *Smaligo* and *Zak*, the arbitrators refused to permit the introduction of an expert witness' testimony **in its entirety**, thus completely precluding the losing parties from exercising their basic procedural right to an opportunity to be heard and defend themselves. The denial of this minimum procedural requirement deprived these litigants of fundamental due process, namely "a full hearing with the opportunity to be heard and to present evidence." *Andrew*, 976 A.2d at 502.

In this case, by contrast, the arbitrator did not preclude the testimony of any witness in its entirety. Instead, the arbitrator made evidentiary rulings regarding the appropriate limits on evidence, including a time limitation and the discovery of some (but not all) allegedly privileged materials. While the arbitrator did not set forth the bases for his rulings in his written opinion/decision, such information is not necessary in this context. Thomas has not cited to any authority suggesting that it is the

proper function or province of this Court to pass on the discretion of an arbitrator's evidentiary rulings. Rule R21 of the AAA Commercial Arbitration Rules provides that discovery shall be conducted "at the discretion of the arbitrator," and Rule R31(a) states that evidence may be introduced at the evidentiary hearing "as the arbitrator may deem necessary to an understanding and determination of the dispute." Rule 31(a) further provides that formal rules of evidence need not be followed. Finally, R30(b) gives the arbitrator the discretion to "conduct the proceedings with a view to expediting the resolution of the dispute."

Here, these rules appear to have provided the arbitrator with the authority to make the rulings now questioned by Thomas on appeal. This Court cannot and will not review the reasonableness or propriety of these rulings. Rather, we need only conclude that the arbitrator's evidentiary decisions in this case did not deprive Thomas of any fundamental due process rights.

As set forth hereinabove, the trial court's rulings are affirmed in part and reversed in part. In summary, we affirm the trial court's order dated August 28, 2012 with respect to Counts I, II, IV, V, and VI of Thomas' Complaint, but reverse with respect to Count III. As to Count III, on remand the trial court must decide Thomas' claim requesting the appointment of a custodian pursuant to § 1767(a)(2) of Pennsylvania's Business Corporation Law. The case is remanded to the trial court for

further proceedings consistent with this Memorandum. Jurisdiction relinquished.

Stabile, J. joins the Memorandum.

Bowes, J. files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2015