Diana HUEGEL and George Huegel, her husband, Appellees

v.

MIFFLIN CONSTRUCTION COMPANY, INC. and Conseco Finance Company, formerly known as Greentree Financial Corporation.

Appeal of: Mifflin Construction Company, Inc., Appellants.

Superior Court of Pennsylvania.

Argued Feb. 6, 2002.

Filed April 3, 2002.

---

David Abrams, Monroeville, for appellant.

Gary H. Nash, Erie, for Huegel, appellee.

Michael F. Frisbie, Philadelphia, for Conseco Finance Co., appellee.

Before: DEL SOLE, P.J., BENDER and TAMILIA, JJ.

BENDER, J.

¶ 1 Mifflin Construction Co., Inc. (Mifflin) and Conseco Finance Co. (Conseco) (hereinafter jointly addressed as Appellants), defendants in the action below, appeal from the trial court's order dismissing their preliminary objections, which sought an order to compel the plaintiffs, Diana Huegel and George Huegel (Huegels), wife and husband, to submit their claims to arbitration. Appellants argue that the trial court erred in determining that the arbitration clause contained in the Home Improvement & Installment Contract and Truth in Lending Disclosure did not apply to the claims asserted in this action. For

the following reasons, we reverse and remand.

¶ 2 This case arises from a dispute between the Huegels and Mifflin regarding home improvement work that Mifflin performed on the Huegels' house. On August 26, 1996, the Huegels and Mifflin entered into a contract for the replacement of the roof on the Huegels' house for $10,900. On September 26, 1996, the Huegels and Mifflin entered into a second contract that included the work to be performed in the first contract and, in addition, the replacement of windows and doors, for a total sum of $20,400. None of the parties dispute that the second contract operated as a novation of the first contract. Both the first and second contracts were written and signed on forms pre-printed with a Mifflin business heading and entitled "Agreement."

¶ 3 On October 28, 1996, the Huegels and Mifflin entered into a third contract entitled "Pennsylvania Home Improvement Installment Contract & Truth in Lending Disclosure." This third contract provided the Huegels with financing for payment to Mifflin for the work that it was to perform and referenced an attachment of the second contract as a description of the work to be performed. The third contract contained an arbitration clause that was not contained in either the first or second contract. The applicability of this arbitration clause is the subject of this appeal.

¶ 4 On the same date that the Huegels and Mifflin entered into the third contract, they also executed a document entitled "Collateral Mortgage." The Collateral Mortgage, as well as the third contract, listed Empire Funding Corp. as the financing entity. Conseco ultimately acquired the financing note.

¶ 5 On June 7, 2000, the Huegels filed their complaint against Mifflin and Conseco in the Court of Common Pleas of Erie County. The complaint contained four counts and sounded in breach of contract, breach of warranty, and violation of the Unfair Trade Practices and Consumer Protection Law. *See* 73 P.S. § 201–1 *et seq.* Mifflin and Conseco filed preliminary objections seeking to compel the Huegels to arbitrate their claims. On January 19, 2001, the Honorable Fred P. Anthony denied the preliminary objections, and Mifflin then filed this appeal. Mifflin and Conseco have both filed briefs in this appeal. Mifflin raises one question for our review:

I. Did the Court of Common Pleas of Erie County, Pennsylvania err in overruling preliminary objections to the complaint based upon invocation of an arbitration provision contained in the agreement executed by the parties?

Brief of Mifflin at 5. Conseco raises three questions for our review:

I. Whether the August 26, 1996 agreement, the September 26, 1996 agreement and the October 28, 1996 financing agreement are integrated where the August 26, 1996 and September 26, 1996 [agreements] reference the latter financing agreement and the October 28, 1996 financing agreement references the work to be performed at the plaintiffs' home which was set forth in the August 26, 1996 agreement and the September 6, 1996 agreements?

II. Whether an arbitration clause contained in a financing agreement which provides that "any and all disputes relating [to] the provisions of, or obligations or work performed" encompasses claims for faulty workmanship which were the subject of the financing agreement?

III. Whether the executed financing agreement which contains an agreement to arbitrate any and all disputes is unconscionable where plaintiff admits she failed to the [sic] read the document?

Brief of Conseco at 4. The first question raised by Mifflin, and the first and second questions raised by Conseco, all challenge the trial court's construction and interpretation of the contracts when it determined that the arbitration clause in the third contract did not apply to the claims set forth by the Huegels in their complaint. Accordingly, we shall first address these questions jointly. The third question that Conseco raises counters an argument advanced by the Huegels in the trial court, and on appeal, which would serve as an alternative basis for determining that the Huegels' claims are not subject to the arbitration clause. We shall address this issue when we reach the arguments advanced by the Huegels on appeal regarding several alternative bases for affirming the decision of the trial court.

¶ 6 "Arbitration is a matter of contract and, as such, it is for the court to determine whether an express agreement between the parties to arbitrate exits." *Smith v. Cumberland Group, Ltd.,* 455 Pa.Super. 276, 687 A.2d 1167, 1171 (1997). "It is well-settled that the issue of whether a particular dispute falls within a contractual arbitration provision is a matter of law for the court to decide." *Shadduck v. Christopher J. Kaclik, Inc.,* 713 A.2d 635, 637 (Pa.Super.1998). "Our review is plenary, as it is with any review of questions of law." *Midomo Co., Inc. v. Presbyterian Housing Dev. Co.,* 739 A.2d 180, 187 (Pa.Super.1999).

¶ 7 The first issue raised by Appellants is whether the trial court committed an error of law when it determined that the arbitration clause did not apply to the claims set forth in the Huegels' complaint. The trial court determined that the arbitration clause was not applicable because the Huegels' claims were based on the second contract that covered the construction work performed on their house. Trial Court Opinion (T.C.O.) at 4–5. The trial court reasoned "that the third contract was signed separately and does not integrate either of the first two contracts" and, therefore, "the parties had agreed to arbitrate any disputes arising out of problems surrounding the financing agreement not the construction agreements." *Id.* at 5. Conversely, Appellants both argue that the third contract represented an integrated agreement between the parties because the second contract and third contract reference one another. Therefore, they argue, the arbitration clause in the third contract applies to all disputes that arise from the construction work and the financing.

¶ 8 "The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties." *Lower Frederick Township v. Clemmer,* 518 Pa. 313, 543 A.2d 502, 510 (1988) (plurality opinion).

> In order to determine the meaning of the agreement, we must examine the entire contract since it is well settled that in construing a contract the intention of the parties governs and that intention must be ascertained from the entire instrument taking into consideration the surrounding circumstances, the situation of the parties when the contract was made and the objects they apparently had in view and the nature of the subject matter.

*In re Mather's Estate,* 410 Pa. 361, 189 A.2d 586, 589 (1963). "Where several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the

other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." *Neville v. Scott,* 182 Pa.Super. 448, 127 A.2d 755, 757 (1957).

¶ 9 Appellants rely on one clause in the second contract and two clauses in the third contract for their argument that the third contract represents the parties' integrated agreement. Brief of Mifflin at 11–13; Brief of Conseco at 10–12. Initially, they point to a provision in the second contract that gives the Huegels the right to request that Mifflin arrange financing for the price of the contract. The provision reads:

> Buyer(s) may at any time between start and completion of above-described goods and services, request seller to arrange a loan in the amount necessary to cover the price under this agreement. If seller is unable to arrange such a loan, the agreement is automatically void.

Reproduced Record (R.R.) at 20a. Appellants argue that the foregoing provision demonstrates that the second contract contemplated a future third agreement between the parties that was realized in the form of the third contract. Next, they direct us to two clauses in the third contract that refer back to the second contract. The first clause states:

> Description of Goods and Services Purchased ("Collateral")—attach specification sheet if necessary:  see attached

R.R. at 21a. Appellants claim that this clause in the third contract, which describes the goods and services purchased, references the second contract with the words "see attached" because the second contract describes the construction work that was done on the Huegels' house. The second clause upon which Appellants rely

is in bold typeface in the middle of the first page and states:

> **Payment of this note is subject to the terms of a home improvement installment contract of even date between maker and payee.**

R.R. at 21a. Again, Appellants claim that this is yet another example of how the third contract expressly makes reference to the second contract.

¶ 10 Conversely, the Huegels claim that "the Court of Common Pleas correctly assumed jurisdiction over all issues arising between the parties so that a bifurcated hearing process would not be required." Brief of Huegels at 8. The crux of their argument is that the Huegels' complaint contains allegations of unfair trade practices arising from Mifflin's purported actions and oral statements when it entered into the second contract with the Huegels and, therefore, these claims were not subject to the arbitration clause in the third contract because they "predate the signing of the binding arbitration clause agreement." *Id.* The Huegels also rely on the language of the arbitration clause itself wherein it states that "any and all disputes relating [to] the provisions of, or obligations or work performed under this Contract shall be submitted to binding arbitration." R.R. at 21a. They claim that the "obligations or work performed under this Contract" refers only to the financing.

¶ 11 The Huegels' argument hinges upon their characterization of the underlying contracts as forming two separate transactions; one for the goods and services and the other for the financing. After reviewing the second contract and third contract, however, we conclude that they represent one transaction that culminated in the execution of the third contract. Initially, the second contract contemplates the execution of a future agreement for financing.

Had the Huegels requested the financing and Mifflin refused or was unable to arrange it, then the second contract would have been "void" pursuant to its own terms. Thus, after the Huegels requested that Mifflin arrange financing, the viability of the second contract became expressly conditioned on the execution of the third contract.

¶ 12 Additionally, the third contract that is partly entitled "Home Improvement Installment Contract" makes several references to the goods and services that the Huegels were purchasing from Mifflin. Although the Huegels claim that the third contract is "merely the financing," the contract is replete with references not only to their obligation to repay the money borrowed, but also to their rights and obligations for the goods and services purchased. Brief of Huegels at 9. On the first page of the contract, the goods and services are described by a reference to the second contract in the form of a provision stating "see attached." Below that, there is a clause stating that the Huegels **"agree to purchase** the property and/or services described above for the Total Sales Price (rather than the cash price)." R.R. at 21a (emphasis added). As stated above, the third contract again references the second contract in bold letters as a "home improvement installment contract."

¶ 13 The Huegels further reject Appellants' claim that the third contract represented the parties' integrated agreement, and rely on the trial court's statement that "[t]here is no clause in the third contract integrating either the first or second contract into the third contract." T.C.O. at 4–5. They argue that without an integration clause in the third contract, there was no basis for requiring them to submit their claims to arbitration. Brief of Huegels at 9. We disagree.

¶ 14 To the extent that the trial court's foregoing statement is considered a finding of fact, we conclude that it is unsupported by substantial evidence and, therefore, we are not bound by it. *See Midomo,* 739 A.2d at 186. Contrary to the trial court's statement and the Huegels' assertion, the third contract does contain an integration clause that states:

**ENTIRE AGREEMENT:** You acknowledge that this Contract contains the entire agreement between Us, and affirm that we have made no promise regarding the goods and services described herein other than those contained in this Contract. No modification of this Contract will be effective unless it is in writing and signed by both of us.

R.R. at 22a. *Cf. Brinich v. Jencka,* 757 A.2d 388, 400 (Pa.Super.2000), *appeal denied,* 565 Pa. 634, 771 A.2d 1276 (2001) (discussing an integration clause substantially similar to the one above).

¶ 15 Normally, "[i]f a written contract is unambiguous and held to express the embodiment of all negotiations and agreements prior to its execution, neither oral testimony nor prior written agreements or other writings are admissible to explain or vary the terms of that contract." *Lenzi v. Hahnemann University,* 445 Pa.Super. 187, 664 A.2d 1375, 1379 (1995). In this case, the third contract contains an unambiguous clause stating that it is the entire agreement. However, the third contract also contains several references to the second contract and the goods and services described therein. After reading the contracts together and in reference to one another, *see Neville,* 127 A.2d at 757, we hold that the integration clause combined with the numerous references in the third contract to the second contract effectively incorporated the second contract into the third contract to the extent that the second contract does not conflict with

any of the provisions within the third contract. Consequently, the arbitration clause in the third contract applies to any claims arising from the Huegels' purchase of the goods and services from Mifflin as well as the obligations arising from the financing provided.

¶ 16 We next address three alternative bases advanced by the Huegels for affirming the trial court's decision:

II.  Are unfair trade practice violations by Mifflin Construction Company, Inc., in failing to comply with the finance provisions of the agreement dated September 26, 1996 between the parties, which agreement contained no arbitration provision, subject to the arbitration provision of the contract agreement dated October 28, 1996?

III.  Is the arbitration provision contained in the contract dated October 28, 1996 a contract of adhesion and an unconscionable contract provision[?]

IV.  Is the arbitration provision contained in the contract agreement dated October 28, 1996 in violation of the arbitration provision requirements of the Federal Magnuson Moss Warranty Act, 15 U.S.C. § [sic] 2301–2312?

Brief of Huegels at 1.

■ ¶ 17 First, the Huegels claim that their allegations of unfair trade practices are not covered by the arbitration clause in the third contract because the factual bases for these claims occurred prior to the execution of the third contract. As we have already concluded that the arbitration clause in the third contract applies to the transaction regarding the purchase of the goods and services as well as the financing, we find this argument without merit. We note that there is no limiting language in the arbitration clause that would prevent the Huegels from asserting their unfair trade practices claims in arbitration. *See Shadduck,* 713 A.2d at 638–39. *See also*

73 P.S. § 201–9.2 (granting individuals a right of private action for UTPCL claims without a limitation on forum); *Cunningham v. Fleetwood Homes of Georgia, Inc.,* 253 F.3d 611, 617 (11th Cir.2001) (stating that "[a]greements to arbitrate are essentially forum selection clauses.").

■ ¶ 18 The Huegels next argue that the arbitration clause "constitutes a contract of adhesion and is an unconscionable provision between the parties." Brief of Huegels at 10. "An adhesion contract is defined as a '[s]tandard form contract prepared by one party, to be signed by the party in a weaker position, [usually] a consumer, who has little choice about the terms.'" *Robson v. E.M.C. Ins. Cos.,* 785 A.2d 507, 510 (Pa.Super.2001) (quoting BLACK'S LAW DICTIONARY (7th ed.1999)). "However, merely because a contract is a contract of adhesion does not automatically render it unconscionable and unenforceable." *Todd Heller, Inc., v. United Parcel Service, Inc.,* 754 A.2d 689, 700 (Pa.Super.2000). The issue of whether a contract is unconscionable is a question of law. *See id.* In order for a court to deem a contractual provision unconscionable, "it must determine both that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Id.* at 701 (quotation marks and citations omitted).

¶ 19 Although the Huegels devote four pages of argument to this issue, they never attempt to articulate how the arbitration clause in the third contract is "unreasonably favorable" to Appellants. The arbitration clause does not in any way limit the Huegels' remedies against the Appellants. The clause requires that arbitration proceed pursuant to the rules of the American Arbitration Association. We fail to discern how this clause may possibly be construed

to be "unreasonably favorable" to Appellants. Furthermore, our Supreme Court has repeatedly stated that the law of our Commonwealth favors the resolution of disputes by arbitration:

It is unquestioned that arbitration is a process favored today in this Commonwealth to resolve disputes. By now it has become well established that settlement of disputes by arbitration are no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested, arbitration is favored by the courts.

*Commonwealth, Office of Admin. v. Commonwealth, Pennsylvania Labor Relations Bd.*, 528 Pa. 472, 598 A.2d 1274, 1277–78 (1991) (quotation marks and citations omitted). Accordingly, we conclude that the arbitration clause in this case is not unconscionable.

¶ 20 Finally, the Huegels claim that the arbitration clause violates the Magnuson–Moss Warranty Act (MMWA). *See* 15 U.S.C. § 2301 *et seq.* They claim that the MMWA is applicable to this case because Mifflin is "selling a package of goods and services and therefore providing warranties that would be subject to the [MMWA]." Brief of Huegels at 15.

¶ 21 "Magnuson–Moss is, in the main, a remedial statute designed to protect consumers from deceptive warranty practices. Its draftsmen believed that consumer product warranties often were too complex to be understood, too varied to allow meaningful comparisons and too restricted to provide meaningful warranty protection." *Skelton v. General Motors Corp.*, 660 F.2d 311, 314 (7th Cir.1981). "The Act does not require that a seller give a warranty on a consumer product, only that if a warranty is given, it must comply with the terms of the act." *Robin Towing Corp. v. Honeywell, Inc.*, 859 F.2d 1218, 1223 (5th Cir.1988). "The Act prescribes content and minimum standards for written warranties, *see* 15 U.S.C. §§ 2302, 2304, but it is content to supplement state-law implied warranties only by prohibiting their disclaimer in certain circumstances, *see* 15 U.S.C. § 2308, and affording a federal remedy for their breach." *Richardson v. Palm Harbor Homes, Inc.*, 254 F.3d 1321, 1325 (11th Cir.2001).

¶ 22 Our review of the contracts in this case reveals no written warranties. Furthermore, the Huegels do not claim that the contracts contain written warranties. Nor do they claim that Appellants violated the MMWA by disclaiming certain implied warranties. Consequently, we find the MMWA to be inapplicable to the facts of this case.

¶ 23 Order **REVERSED**. Case **REMANDED** for further proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED**.