**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BIG & LITTLE OIL, LLC; BIVINS RYAN INVESTMENTS, LLC; BLUE SPHINX MANAGEMENT LTD; BRYAN WOOD; BTBA, LLC; CAROLYN BIVINS 1952 TRUST #4; CO-PA, LLC; CORNELIA WADSWORTH RITCHIE TRUST NO. FOUR; CUSOLITO PULTORAK, LLC; DARRELL F. AND SUZANNE H. ABEL; EDWIN SHELTON PROPERTIES, LLC; EVA DROBEZKO; FB. LAMAR, LP; FB ROHANNA, LP; FHMW, LLP; FINE BUNCH, LLC; GALBRAITH GREENE, LLP; GALBRAITH LAMAR, LLP; GALBRAITH ROHANNA, LLP; GALBRAITH ROHANNA 2 LLP; GEORGE W. ZUNDELL; HOOK GREENE COUNTY, LLP; HOOK LAMAR, LLP; HOOK LAMAR 2, LLP; HOOK ROHANNA 1, LLP; HOOK ROHANNA 2 LLP; HOOK ROHANNA 3 H LLP; JABST INVESTMENTS, LLC; JOHN & KATHY MCNAY; JUSKOWICH PULTORAK 1H & 2H, LLP; JUSKOWICH ROHANNA 2H, LLP; KEENER OIL & GAS, LLP; LIVING GOOD, LLC; LNR INTERESTS, LP; MARK ERNEST BIVINS TRUST; MARK E. FOX, EXECUTOR OF THE ESTATE OF J.K. WILLISON, DECEASED; MENDICINO VENTURES, INC.; MG BIG GREEN VENTURES, LLC; MOUNTAINTOP INVESTORS 2010-1, LLC; MOUNTAINTOP INVESTORS 2010-2, LLC; MOUNTAINTOP INVESTORS L2-H, LLC; MOUNTAINTOP INVESTORS R-2H, LLC; MOUNTAINTOP INVESTORS PT LLC; ROHANNA IRON & METAL, INC.; SILVER FOX FARM, LLC; THOMAS PEYTON BIVINS TRUST; THOMAS E. & BERTHA M. SCHERICH; THOMAS M. COLELLA REVOCABLE TRUST; TRES NGUYEN, LLC; WILLISON FOX, LLP; AND 1952 ELDER BIVINS CHILDREN'S EXEMPT TRUST | IN THE SUPERIOR COURT OF PENNSYLVANIA |

|  |  |
|---|---|
| Appellees | |
| v. | |
| TANGLEWOOD EXPLORATION LLC AND VANTAGE ENERGY APPALACHIA, LLC | |
| Appellants | No. 1813 WDA 2014 |

Appeal from the Order entered October 24, 2014

In the Court of Common Pleas of Washington County

Civil Division at No: 2013-7699

BEFORE:  BOWES, OLSON, AND STABILE, JJ.

DISSENTING MEMORANDUM BY STABILE, J.:　　　　　**FILED JULY 25, 2016**

I would affirm the trial court's order based on the plain language of the Joint Operating Agreements ("JOAs") and Participation Agreements ("PAs"). I therefore respectfully dissent.

As the Majority notes, each of the PAs contains a forum selection clause:  "No proceeding related directly or indirectly to this Agreement shall be commenced, prosecuted or continued in any court other than the courts of the State of Texas located in the county of Tarrant."  Appellant's Amended Preliminary Objections, 8/8/14, at Exhibit A, [PA] between Tanglewood and

- 2 -

Big and Little Oil, LLC, at ¶ 15.[1]  Paragraph fifteen also provides that the laws of Texas will govern any dispute.  *Id.*  The PAs incorporated the JOAs by reference.  *Id.* at ¶ 2.  Essentially, the PAs provide a general outline of the relationship between the signatory Appellee and Tanglewood.  They provide that the signatory Appellee (designated in the PA as a "Participant"), will fund a percentage of Tanglewood's drilling operations at a given site in exchange for a percentage interest in the proceeds from that site.  *Id.* at ¶¶ 1-6.

The JOAs contain extensive details governing the relationship between Tanglewood and the signatory Appellees.  In particular, the JOAs detail Tanglewood's rights and obligations as driller and operator.  Appellees' Amended Complaint, 6/23/14, at Exhibit A (A.A.P.L. Form 610-1989 Model Form Operating Agreement , at Article V-VI).  The JOAs also govern Tanglewood's accounting obligations.  *Id.*, at Article V, ¶ D.2 and Exhibit C. The JOAs provide that the governing law will be the "law of the state in which the Contract Area [i.e., the site of the drilling] is located."  *Id.*at Article XIV, ¶ B.  The JOAs do not incorporate the PAs by reference, and they do not contain a forum selection clause.

Significantly, JOAs form the basis for all of the causes of action in Appellees' amended complaint.  The amended complaint does not allege causes of action arising under the PAs.  The amended complaint states that

---

[1]  As the Majority notes, the PAs and JOAs are substantively identical.

the JOAs require Tanglewood to "pay to the [Appellees] proceeds from production and assess the cost of drilling and completion against a joint account for each JOA (the "Joint Account") in proportion to the working interest of each [Appellee]." Amended Complaint, 6/13/14, at ¶ 69. The amended complaint further alleges that the JOAs require Tanglewood to "keep an accurate record of the joint account hereunder, showing expenses incurred and charges and credits made and received." *Id.* at ¶ 70 (quoting JOA, at Article V, ¶ D.2). The JOA also gave Appellees "the right to conduct audits to ensure that production, payments, expenses, [billings], and other aspects of the financial dealings among the parties are accounted for properly and accurately according to the terms of the JOAs and otherwise." *Id.* at ¶ 73 (citing JOA, at Article V, ¶ D.5 and Exhibit C).

Appellees requested an audit, and they allege the audit revealed improper billings from Tanglewood to the parties' joint accounts and more than $2 million in underpayment of proceeds. *Id.* at ¶¶ 93-96. The amended complaint alleges that Appellants have been selling gas for higher prices than they have been reporting to Appellees. *Id.* at ¶ 106. Exhibit C of the JOA authorizes Appellees to challenge Tanglewood's charges to the parties' joint accounts. *Id.* at ¶ 98 (citing JOA, at Exhibit C, Article 1, ¶ 4).

The amended complaint also alleges Tanglewood violated provisions in the JOAs governing a change of operator, *i.e.*, the entity conducting the drilling. Article V, ¶¶ B.1 and B.2 govern removal and replacement of an

operator. In general, an operator may resign or be removed for good cause, after which the remaining parties to the contract can choose a successor operator. JOA, at Article V, ¶¶ B.1 and B.2. The amended complaint alleges that Tanglewood transferred its interest in the JOAs to Vantage and "attempted to appoint [Vantage] as successor Operator for the Contract Area for each of the attached JOAs." Amended Complaint, 6/13/14, at ¶ 75. The amended complaint alleges this purported transfer of rights from Tanglewood to Vantage violates Article V, ¶ B of the JOAs. *Id.* at ¶¶ 80-91. The amended complaint also alleges that Tanglewood violated Article XVI ¶ H of the JOAs,[2] whereby Tanglewood agreed that either Tanglewood or one of its affiliates would remain the operator for ten years from the date of the JOAs. *Id.* at ¶ 77 (citing JOA, at Article XVI, ¶ H). The amended complaint alleges that Vantage is not Tanglewood's affiliate. *Id.* at ¶ 78.

"[O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law." *Richmond v. McHale*, 35 A.3d 779, 783 (Pa. Super. 2012). Appellants objected to venue based on the forum selection clause in the PAs. Appellees, however, alleged causes of action arising solely under the JOAs. Appellants argue we must construe the PAs and the

---

[2] This provision appears in six of the seven JOAs at issue in this litigation.

JOAs as a single agreement. Appellants argue the forum selection clause[3] applies because the PAs incorporate the JOAs by reference and because the forum selection clause requires any "proceeding related directly or indirectly to this Agreement" to be filed in Tarrant County, Texas. PA, at ¶ 15. The issue before us is therefore one of contract interpretation.

> The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Southwestern Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177, 187 (Pa. Super. 2013), *appeal denied*, 96 A.3d 1029 (Pa. 2014).

In addition:

> It is a general rule of law in the Commonwealth that where a contract refers to and incorporates the provisions of another, both shall be construed together. It is well-settled that clauses

---

[3] "[T]he modern trend is to uphold the enforceability of forum selection clauses where those clauses are clear and unambiguous. *Patriot Commercial Leasing Co., Inc. v. Kremer Rest. Enterprises, LLC*, 915 A.2d 647, 650 (Pa. Super. 2006), *appeal denied*, 951 A.2d 1166 (Pa. 2008). "[A] forum selection clause will be considered unreasonable 'only where its enforcement would, under all circumstances existing at the time of litigation, seriously impair [a party's] ability to pursue his cause of action.'" *Id.* (quoting *Central Contracting, Co. v. C.E. Youngdahl & Co.*, 209 A.2d 810, 816 (Pa. 1965). In light of my conclusion that the PAs are separate agreements and that their forum selection clauses do not apply to Appellees' causes of action under the JOAs, the law of forum selection clauses is not relevant to my analysis.

> in a contract should not be read as independent agreements thrown together without consideration of their combined effects. Terms in one section of the contract, therefore, should never be interpreted in a manner which nullifies other terms in the same agreement.

*Id.* (quoting *Trombetta v. Raymond James Fin Servs., Inc.*, 907 A.2d 550, 560 (Pa. Super. 2006)).  The *Southwestern* Court also wrote that "[w]here several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other."  *Id.* at 187.  In *Southwestern*, the Court considered a lease and a letter agreement, both executed in 2002.  *Id.* at 187.  This Court noted the two documents referenced and incorporated each other "with the clear intent they should be interpreted as a single agreement."  *Id.*  Indeed, the letter agreement described itself as an amendment of the lease.  *Id.* at 188.  Based on the unequivocal language of the two documents, we interpreted them together as a single agreement.  *Id.*

Appellants also rely on *Heugel v. Mifflin Constr. Co., Inc.*, 796 A.2d 350 (Pa. Super. 2002).  There, the plaintiff homeowners sued a construction company and a financing company that loaned plaintiffs money for their home improvement project.  *Id.* at 352-53.  The construction contract gave the plaintiffs the right to ask the contractor to arrange a construction loan, and plaintiffs did so.  *Id.* at 355.  The loan agreement contained an

arbitration clause, but the construction contract did not. *Id.* The trial court overruled the defendants' preliminary objections seeking to compel arbitration. *Id.* The trial court found the arbitration clause inapplicable because the plaintiffs' causes of action arose from work performed under the construction contract. *Id.* at 354. The loan agreement attached a description of the goods and services purchased and provided that payment of the note was subject to the terms of the contract between the construction company and plaintiffs. *Id.* The arbitration clause in the loan agreement stated: "any and all disputes relating [to] the provisions of, or obligations or work performed under this Contract shall be submitted to binding arbitration." *Id.*

This Court concluded the two agreements were part of one transaction, noting that the loan agreement was "replete with references not only to [plaintiffs'] obligation to repay the money borrowed, but also to their rights and obligations for the goods and services purchased." *Id.* at 356. Ultimately, the *Heugel* Court concluded the loan agreement "effectively incorporated" the construction contract, and that the arbitration clause in the loan agreement applied to plaintiffs' causes of action on the construction contract. *Id.*

Appellants argue we must construe the PAs and the JOAs together, because they plainly relate to the same series of transactions. Appellants note that the PAs incorporate the JOAs, and the PAs' forum selection clauses

apply to any action relating directly or indirectly to the PAs. I would conclude Appellants' argument does not survive close inspection of the PAs and JOAs.

As Appellees note, the PAs in several places refers to itself as "this Agreement" and, in the same paragraph or clause, refers additionally to the "JOA." For example, paragraph 8 of the PA provides as follows: "8. Operating Standard. Tanglewood shall not be liable to the participant for Tanglewood's own sole, joint or concurrent negligence or strict liability arising from its operations under **this agreement or the JOA**[.]" PA, at ¶ 8 (emphasis added). Likewise, in paragraph 13:

> 13. Assignment. Any purported sale, assignment or transfer of Participant's interest [. . .] shall require the written consent of Tanglewood [. . .] providing Participant has complied with **this Agreement and all other agreements including the JOA** and providing the third party assumes all responsibility **under this Agreement and the JOA**[.]

PA, at ¶ 13 (emphasis added). Thus, paragraph 13 expressly refers to the JOAs as among a group of "other agreements."

With this background, I quote in full the language of the PAs' forum selection clause:

> 15. Governing Law. **This Agreement** and any claims related directly or indirectly to **this Agreement** shall be governed by, and construed and interpreted in accordance with, the laws of the State of Texas. No proceeding related directly or indirectly to **this Agreement** shall be commenced, prosecuted or continued in any court other than the courts of the State of Texas located in the county of Tarrant.

PA, at ¶ 15 (emphasis added).

Thus, the PAs consistently refer to themselves as "this Agreement." The PAs consistently and expressly refer to the JOAs as distinct from "this Agreement." Most significantly, the PAs forum selection clauses refer only to "this Agreement." If, as Appellants argue, the PA forum selection clauses applied to the JOAs, I would expect to see the second sentence of paragraph 15 state: "No proceeding related directly or indirectly to this Agreement **or the JOA** shall be commenced. . ." It does not. Appellees seem to argue that the absence of any reference in paragraph 15 creates a latent ambiguity that renders the forum selection clause unenforceable. I would conclude instead that the PAs' forum selection clauses unambiguously apply only to actions arising under the PAs. To reach this conclusion, I need only examine the writing and give effect to its unambiguous terms, in accord with basic principles of contract interpretation. **Southwestern**, 83 A.3d 177 at 187.[4]

Finally, I believe the facts before us are distinguishable from **Southwestern** and **Heugel**. In those cases, the agreements at issue mutually referred to one another. Here the PAs attached and incorporated the JOAs, but the JOAs do not refer to or incorporate the PAs. Further, as I have explained, the PAs draw express distinctions between themselves and

---

[4] In addition, as noted above, the JOAs contain their own governing law clause, albeit without a forum selection clause. The JOAs provide that Pennsylvania law governs any dispute arising thereunder. While choice of law is not directly at issue in this appeal, I believe the contradictory choice of law provisions in the PAs and JOAs undermine Appellants' argument that the parties intended the PAs and the JOAs to be construed together as one agreement.

the JOAs and treat the JOAs as separate agreements.  No such facts were present in **Southwestern** and **Heugel**.

For the foregoing reasons, I respectfully dissent.