J-A18006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KRIEBEL MINERALS, INC., KRIEBEL PRODUCTION CO., KRIEBEL RESOURCES COMPANY, JGG PARTNERS, L.P., K & K MINERAL RESOURCES CO., KRIEBEL GAS & OIL, INC., KMSD LLC, KMSD 2019 LLC, KMSD 2020 LLC, KRIEBEL PRODUCTION CO. LLC, KRIEBEL LEASING LLC, KRIEBEL RESOURCES CO., LLC, KREIBEL RESOURCES AND K & K MINERALS LLC | : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : : : | |
| | : | |
| EQT CORPORATION, EQT PRODUCTION COMPANY, EQT ENERGY LLC, EQUITRANS LP, EQUITRANS MIDSTREAM CORP., EQUITRANS SERVICES, LLC, EQT MIDSTREAM, EQT GATHERING, INC. AND EQT GATHERING, LLC | : : : : : : : : : | No. 1427 WDA 2022 |
| Appellants | : | |

Appeal from the Order Entered November 21, 2022
In the Court of Common Pleas of Clarion County Civil Division at No(s):
254 CD 2022

BEFORE:  BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: January 31, 2024**

EQT Corporation, EQT Production Company, EQT Energy LLC, Equitrans

LP, Equitrans Midstream Corp., Equitrans Services, LLC, EQT Midstream, EQT

Gathering, Inc., and EQT Gathering, LLC (collectively "Appellants") appeal

from the order entered on November 21, 2022, in the Court of Common Pleas

of Clarion County, denying Appellants' motion to compel arbitration in the underlying action.[1]  We affirm.

We glean the following relevant facts and procedural background from the record.  On June 11, 2008, Kriebel Minerals, Inc. ("KMI"), Kriebel Production Co., Kriebel Resources Company, JGG Partners, L.P., K & K Mineral Resources Co., and Kriebel Gas & Oil, Inc. (collectively, together with KMI, "Sellers" or "Appellees"), entered into a purchase and sale agreement ("PSA") with Range Resources-Appalachia, LLC ("Range Resources" or "Buyer"),[2] by which Sellers transferred certain oil and gas leasing rights located in southwestern Pennsylvania to Range Resources.[3]  Range Resources subsequently assigned these rights to Appellants.

As part of the PSA, the parties agreed to an area of mutual interest ("AMI"), which generally consisted of lands within one mile of the conveyed oil and gas interests, with certain exceptions.  Of particular importance to the matter before us, if Appellants decide to drill or participate in the drilling of a well located on any of the leases conveyed by the PSA or within the AMI,

---

[1] An order denying an application to compel arbitration is appealable as of right.  *See* Pa.R.A.P. 311(a)(8); 42 Pa.C.S. § 7320(a)(1).

[2] Range Resources is not a party to the underlying action or the instant appeal.

[3] We note that the additional appellees named in the above caption, *e.g.*, KMSD LLC, KMSD 2019 LLC, KMSD 2020 LLC, Kriebel Production Co. LLC, Kriebel Leasing LLC, Kriebel Resources Co. LLC, Kriebel Resources, and K & K Minerals LLC, are the purported "designees of the original contracting [Sellers] pursuant to the express terms of the PSA[,]"  Appellees' Brief at 2 n.1, and, for the sake of brevity, are included by reference to "Appellees" herein.

Appellees maintain the right to elect to participate in such drilling interest. Appellees' participation rights are governed by Section 11.5 of the PSA, which provides:

**11.5 Participation of KMI**

(a) KMI and any Permitted Participation Assignee[4] shall have the right to elect to participate for up to an aggregate of 15% of the Drilling Party's interest in each well … to be drilled in the Deep Rights[5] by or on behalf of such Drilling Party upon any Lease, any Jointly Owned AMI Interest or any lands pooled or unitized therewith (collectively, the "Participation Lands") in accordance with the terms and conditions of this Section 11.5.

(b) If Buyer or its successors and assigns with respect to the Participation Lands (Buyer and or such successors and assigns, a "Drilling Party") decides to drill or participate in the drilling of any such well, then such Drilling Party shall provide to KMI notice of such Drilling Party's decision to drill or participate in the drilling of any such well … (the "Well Notice")….

(c) KMI (on its own behalf and/or on behalf of any Permitted Participation Assignee) shall have the right to elect to participate

_____

[4] Section 11.3 of the PSA provides, in part:

KMI may assign all or part of its rights under Section 11.5 to any Seller or any Affiliate of any Seller (a "Permitted Participation Assignee"); provided that any Well Notice required to be given by a Drilling Party under Section 11.5 shall be given only to KMI who shall be responsible for providing any such Well Notice to any of its Permitted Participation Assignees.

PSA, 6/11/08, at 17 § 11.3.

[5] The PSA defines "Deep Rights" as "all depths and formations lying 100 feet below the base of the Elk Formation/Group/Zone, such base of the Elk Formation/Group/Zone being depicted at a depth of 6,086 feet on the gamma ray density, neutron, induction and temperature log run on August 19, 2004[,] in the Range Resources Leitch #1 well (Permit 37-129-25338) located in South Huntingdon Township of Westmoreland County, Pennsylvania…." ***Id.*** at 1-2 § 1.1.

in the drilling of such well by delivering to such Drilling Party, on or before the close of business on the 15th day following its receipt of a Well Notice (the "Election Date"), a notice of the election to participate in such well by such Person(s) and the amount of such interest (up to such 15% interest) in which such Person(s) elect to participate (the "Well Interest"), together with all amounts (in immediately available funds) that are attributable to such Well Interest based upon the amounts set forth in the [authority for expenditure ("AFE")] (the "Participation Costs") delivered by Drilling Party to KMI with respect to such well. Any failure by KMI to deliver such notice and pay such Participation Costs on or before the close of business on the Election Date shall be deemed an election by KMI and the Permitted Participation Assignees to not participate in the drilling of the well described in the applicable Well Notice.

(d) If KMI (on its own behalf and/or on behalf of any Permitted Participation Assignee) timely elects to participate in the drilling of a well described in any Well Notice and pays the applicable Participation Costs in accordance with the foregoing, then Drilling Party, within 5 days of its receipt of such election notice and Participation Costs, shall assign to such Person(s) its/their Well Interest in the production unit formed for such well. Such assignment shall be in a form mutually agreeable to such Drilling Party and KMI and shall be without warranty of title except for a special warranty of title by, through and under such Drilling Party. **All operations with respect to any well in which KMI or any Permitted Participation Assignee elects to participate in accordance with this Section 11.5 and the production unit formed therefor shall be governed by [a Joint Operating Agreement, the form of which is attached hereto as "Exhibit E" (the "JOA")].**

PSA at 17-18 §§ 11.5(a)-(d) (emphasis added).

KMI and Range Resources executed the JOA on August 19, 2008, as part of the closing of the PSA. The JOA contains the following arbitration clause:

**I.      Arbitration:**

Any controversy relating to this agreement shall be settled by three (3) disinterested non-related parties, one (1) selected by [KMI], one (1) by Range Resources…, and the remaining one (1) to be appointed by the first two (2) so selected; and the majority

decision of the three (3) arbitrators shall be final and conclusive. The arbitrators shall be jointly instructed by [KMI] … and Range Resources … to choose between the position taken on that issue by [KMI] … and the position taken on that issue by Range Resources…, as opposed to adopting either a compromise position or any position not taken by [KMI] … or Range Resources…. The arbitrators shall report their conclusions in writing to the parties as promptly as possible after submission of the matter to arbitration, but in any event within thirty (30) days after such submission. The arbitrators' ruling will be binding upon the parties. The non-prevailing party will pay the fees and expenses of the arbitrators. A party will be the "prevailing party" if the position proposed by that party is the position determined by the arbitrators. Such arbitration shall occur in Pittsburgh, Pennsylvania.

JOA, 8/19/08, at Art. XVI ¶ I ("Arbitration Clause").

In March of 2022, after learning of certain drilling and production being conducted by Appellants on leases included in the PSA, Appellees instituted the underlying action with the issuance of a praecipe for writ of summons. Appellees then began their pre-complaint discovery in accordance with Pa.R.Civ.P. 4003.8, and filed a notice of their intent to serve Range Resources with a subpoena for the production of "documents and things for discovery[,]" in accordance with Pa.R.Civ.P. 4009.1, in an effort "to obtain information about the conveyance of and acquisition of leases subject to the PSA, as well as Range[ Resources']/[Appellants'] compliance with their obligations under the PSA and activities related to [Appellees'] rights thereunder." Appellees' Brief at 5.

In their first set of interrogatories and request for production of documents served on Appellants, Appellees stated, *inter alia*:

Upon information and belief, EQT Production Company has drilled wells on leases conveyed by [Appellees] to [Appellants,] and [Appellees] ha[ve] not been afforded proper notice and the timely opportunity to participate in and acquire an interest in all the wells drilled or ha[ve] otherwise received no information or, rather, inaccurate and/or incomplete information that has precluded [Appellees] from making an informed decision as to [their] participation in wells as contemplated by the [PSA]. Upon information and belief, the drilling, development, completion, and sale of production was completed by EQT Production Company and its affiliates. The cause of action instituted by [Appellees] has been filed to pursue all available causes of action arising from the assignment of rights under the [PSA] and subsequent actions taken by other parties relative to [Appellees'] rights, including the identification of all appropriate parties to this cause of action. [Appellees'] pre-complaint discovery seeks information material and necessary to the filing of [their c]omplaint, including surrounding facts necessary to satisfy the Commonwealth of Pennsylvania's fact-pleading requirements and damages for which [Appellees are] entitled to recover.

First Pre-Complaint Discovery Directed to Appellants, 5/13/22, at 3.

On June 16, 2022, Appellants filed a motion to compel arbitration, suggesting that any causes of action which Appellees seek to assert relating to their rights under the PSA "are covered by a mandatory arbitration agreement incorporated into the PSA…." Motion to Compel, 6/16/22, at 1. *See id.* at 2 ¶ 3 (Appellants' averring that "[u]nder the PSA, all operations relating to wells or production units in which [Appellees] elect to participate are governed by … [the JOA] that is attached to the PSA as Exhibit E and incorporated into the PSA by reference"); *id.* at 2 ¶ 4 ("Under the JOA, the parties agreed to submit any controversy relating to the agreement to binding arbitration."). They argued that "the Arbitration Clause meets the requirements of an enforceable contract under Pennsylvania law[,]" and that

"[a]ny causes of action … [Appellees] might assert in this action are … within the scope of the Arbitration Clause…." *Id.* at 3 ¶¶ 7-8. *See also id.* at 3 ¶ 6 ("Under Pennsylvania law, the [c]ourt must compel arbitration if there is a valid agreement to arbitrate and the dispute is within the scope of the agreement."). Hence, Appellants sought an order from the trial court compelling arbitration and staying the underlying action pending resolution of any arbitration proceeding. *Id.* at 10 ¶ 9.

Contrarily, Appellees argued that their pre-complaint discovery is directed at compliance with the notice and election terms solely governed by the PSA — **not the JOA** — and that the PSA does not contain an arbitration clause. *See* Response to Motion to Compel Arbitration, 6/28/22, at 4. Appellees emphasized that the JOA only applies once they elect to participate in a well, which is not the case here. *Id.*

A hearing was held on the motion to compel arbitration on September 13, 2022. After careful consideration of the arguments presented by both parties, the trial court agreed with Appellees that the JOA only applies "upon conditional circumstances in which Appellees elect to participate[,]" and concluded that because Appellants "have not elected to participate and are not raising a claim under that election[,] … the JOA's Arbitration Clause does not apply." Trial Court Opinion and Order ("TCOO"), 11/18/22, at 4 (unnumbered). Accordingly, the trial court denied Appellants' motion. *Id.* at 5 (unnumbered). Appellants filed a timely notice of appeal and subsequently complied with the trial court's direction to file a concise statement of errors

complained of on appeal, pursuant to Pa.R.A.P. 1925(b). The reasons for the trial court's decision are set forth in its November 18, 2022 opinion. ***See id.*** at 2-4 (unnumbered).

Herein, Appellants present the following single issue for our review: "Whether the Clarion County Court of Common Pleas erred when it denied [Appellants'] motion to compel arbitration on the basis that the Arbitration Clause within [the JOA] is not applicable to claims relating to election notices for participation in oil and gas wells?" Appellants' Brief at 5 (cleaned up).

We begin by noting the relevant standard of review:

> We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement.
>
> Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary. The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally. These are questions of law and our review is plenary.
>
> Arbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication.

***Elwyn v. DeLuca***, 48 A.3d 457, 461 (Pa. Super. 2012) (internal citations and quotation marks omitted).

Accordingly, we must first ascertain whether a valid agreement to arbitrate exists in the case *sub judice*. The record indicates that, on August 19, 2008, KMI and Range Resources executed the JOA, which contained an arbitration clause stating, "[a]ny controversy relating to this agreement shall be settled by" arbitration. JOA at Art. XVI ¶ I. **See also** TCOO at 1 (recognizing "the parties adopted an August 19, 2008 … JOA, which contained an arbitration clause"). The parties do not dispute the existence or validity of the JOA on appeal; thus, we are satisfied that the first prong of the two-part test — the existence of a valid agreement to arbitrate — is met. **See Elwyn**, 48 A.3d at 461.

Next, we must determine whether the dispute for which Appellants sought to compel arbitration is within the scope of the Arbitration Clause. **See id.** In ascertaining the intent of the parties manifested in their written arbitration agreement,

> the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject matter of the agreement. The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement.

**Provenzano v. Ohio Valley General Hosp.**, 121 A.3d 1085, 1095 (Pa. Super. 2015) (citation omitted).

Instantly, Appellants argue that the Arbitration Clause contains broad language, *e.g.*, "[a]ny controversy relating to this agreement[,]" which is incorporated by reference into the PSA, and that the trial court erred in limiting

the application of this provision, finding that it does not encompass Appellees' claims. Appellants' Brief at 22. More specifically, they aver that the trial court committed the following errors in reaching its conclusion:

> The first error was to assume that the [JOA] does not govern election notices or is otherwise limited to cases where KMI or its permitted assignees invoke participation rights. The second error was to effectively read out the term "relating," which extends the [A]rbitration [C]lause's scope beyond just those controversies arising **under** the [JOA] to also encompass those **relating** to the [JOA]. The third error was to not account for the [JOA's] incorporation to the [PSA] as part of a single transaction and contractual relationship.

*Id.* at 22-23 (citations to record omitted; emphases in original). Appellants have failed to convince us that any relief is due.

> As the trial court so aptly opined:

> Relevant to this case are two separate contracts: (1) the PSA and (2) the JOA. Looking at the plain language of the PSA, the parties did not intend for the provisions of the PSA to be subject to an arbitration clause because the contract lacks such a clause. However, it is clear from the inclusion of an arbitration clause in the JOA, that the parties intended for disputes arising under the provisions of the JOA to be arbitrated. The matter at issue here is the interplay between the two agreements and whether the parties intended the Arbitration Clause of the JOA to apply to the process for electing to participate as outlined in the PSA. …

> **The Arbitration Clause in the JOA applies to "[a]ny controversy relating to this agreement...."** JOA [at] Art. XVI[ ¶] I. **The language "this agreement" refers only to the JOA**. Further, it is too broad an interpretation to infer that the phrase "relating to" subjects the provisions of the PSA to the Arbitration Clause. … **[S]ection 11.5 of the PSA references the JOA under limited circumstances, and cannot be interpreted as applying wholly to the other parts of the PSA. Under this section, if [Appellees] elect[] to participate, the provisions of the JOA will apply to that election.**

- 10 -

> If KMI … timely elects to participate in the drilling of a well described in any Well Notice and pays the applicable Participation Costs…[,] all operations with respect to any well in which KMI or any Permitted Participation Assignee elects to participate in accordance with this Section 11.5 and the production unit formed therefor shall be governed by the JOA.

PSA [at 17 §] 11.5(d).

> **The reference to the JOA only applies upon conditional circumstances in which [Appellees] elect to participate. Absent an election to participate under … [S]ection 11.5 of the PSA, the JOA does not apply.** [Appellees] have not elected to participate and are not raising a claim under that election. [Appellees] proposed a pre-complaint subpoena to ascertain compliance with provisions of the PSA governing the election process, not participation in the actual well drilling activities under the JOA. Therefore, because the issue is not related to [Appellees'] "participation in the drilling of a well," the JOA's Arbitration Clause does not apply. If the parties intended an arbitration clause to apply to the provisions of the PSA outlining the election process, then an arbitration clause should have been included in the PSA itself[;] however, such a clause was not included in the PSA.

TCOO at 2-4 (cleaned up; emphases added). Based on our review, we conclude that the trial court's findings are supported by substantial evidence in the record.

We agree with the trial court's thorough and well-thought-out analysis regarding the interplay of the PSA and the JOA. Appellants' argument that the trial court erred in determining that the application of the JOA's Arbitration Clause is limited to cases in which Appellees have invoked their participation rights ignores the plain and unambiguous language in the documents. It is clear that **absent an election to participate** under Section 11.5 of the PSA, **the JOA does not apply**. *See* PSA at 17 § 11.5(d) (expressly stating that

"**if**" Appellees elect to participate in the drilling of a well, all operations with respect to such well "shall be governed by the JOA") (emphasis added).

To the extent that Appellants insist that the language in the Arbitration Clause is so "broad" as to evidence the parties' intent to arbitrate **all** claims regarding election notices and participation rights, regardless of whether Appellees exercised their participation rights, we emphasize that Appellants again ignore the terms of the documents and fail to recognize the self-limiting language contained in the JOA. *See Provenzano*, 121 A.3d at 1096 (defining a "broad" arbitration clause in a contract as one that is "**unrestricted**" and contains language that encompasses "**all disputes** which relate to contractual obligations") (emphases added).

> As Appellees point out, the cover page of the JOA plainly states:
>
> The Contract Area shall consist of leasehold acreage included in the production unit for any wells drilled on or on a production unit including the Leases (as such term is defined in the [PSA]) **in which [KMI] elects to participate for a working interest pursuant to Section 11.5 of the [PSA]**.

Appellees' Brief at 14 (citation omitted; emphasis added). Moreover, the JOA begins with a declaration that the agreement incorporates a specified set of leases and/or oil and gas interests identified in Exhibit "A," in which "the parties hereto have reached an agreement to explore and develop these Leases and/or Oil and Gas interests for the production of Oil and Gas to the

extent and as hereinafter provided." *Id.* (quoting JOA at 1).[6]  Article XVI of

the JOA further provides:

> A.  Prior Agreement:
>
> This agreement is being entered into by the parties pursuant to that certain [PSA] dated June 11, 2008, by and between [Sellers] and Range Resources … to which this agreement is attached as Exhibit "E[."]  Pursuant to Section 11.5 of the [PSA], [KMI] has the option to participate on a well by well basis in wells proposed by Range [Resources] on or on a production unit including the Leases (as such term is defined in the [PSA]).  In the event of a conflict between any terms and provisions of this agreement and any other similar terms and provisions of the [PSA], the respective terms and conditions of the [PSA] take precedence and prevail….

JOA at Art. XVI ¶ A (emphasis in original).  Thus, the JOA expressly and

unambiguously limits its scope and application to those leaseholds included in

wells drilled on or production units including leases for which Appellees have

exercised their rights to participate pursuant to Section 11.5 of the PSA.

---

[6] Exhibit "A" to the JOA states, in part:

> (1)  Description of lands subject to this agreement:
>
> The lands subject to this agreement are the leasehold acreage included in the unit surrounding any wells drilled on or on a production unit including the Leases **in which [KMI] participates for a working interest pursuant to Section 11.5 of the [PSA]**.
>
> …
>
> (5)  Oil & Gas Leases subject to this Agreement are:
>
> The leasehold acreage included in the production unit surrounding any wells drilled on or using Leases **in which [KMI] participates for a working interest pursuant to Section 11.5 of the [PSA]**.

*Id.* at 14-15 (quoting JOA at Exhibit "A") (emphases added).

Finally, we reject Appellants' assertion that the Arbitration Clause of the JOA **must** be applied to claims brought pursuant to the PSA, because the JOA and the PSA are part of a single transaction. **See** Appellants' Brief at 32-34. **See also id.** at 37 (suggesting that the Arbitration Clause extends to claims arising under the PSA "of which it forms a part" and concluding that "the absence of an arbitration clause in the [PSA] itself was unremarkable"). While the PSA and JOA were executed on separate dates, we recognize that the JOA is an integral part of the PSA. **See** PSA at 32 § 13.5 ("The Exhibits and Schedules referred to in this Agreement shall be deemed to be an integral part of this Agreement."). "It is a general rule of law in the Commonwealth that where a contract refers to and incorporates the provisions of another, both shall be construed together." **Southwestern Energy Production Co. v. Forest Resources**, LLC, 83 A.3d 177, 187 (Pa. Super. 2013). **See also id.** ("Where several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." (quoting **Huegel v. Mifflin Const. Co. Inc.**, 796 A.2d 350, 354-55 (Pa. Super. 2002)). The record reflects that the trial court properly read the PSA and the JOA in reference to each other. Nonetheless, it is clear that the terms of the JOA only apply once Appellees have invoked their participation rights under Section 11.5 of the PSA. **See** TCOO at 2-4.

As Appellees have not elected to participate in the drilling of a well pursuant to Section 11.5 of the PSA in this matter and are not raising a claim under such election, the trial court properly determined that the Arbitration Clause in the JOA does not apply. Moreover, there is no separate arbitration clause contained in the PSA. We concur with the trial court's conclusion that "[i]f the parties intended an arbitration clause to apply to the provisions of the PSA outlining the election process, then an arbitration clause should have been included in the PSA itself…." TCOO at 4. Accordingly, we affirm the trial court's November 21, 2022 order denying Appellants' motion to compel arbitration.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

1/31/2024